UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>VICTOR ALEJANDRO FERNANDEZ,<br><br>          Defendant. | Case No.: 14-cr-277-GPC-2<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 297]** |

Defendant Victor Alejandro Fernandez ("Fernandez") filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c). ECF No. 297. The Government opposes. ECF No. 300 ("Opp."). For the reasons that follow, Fernandez's motion is GRANTED.

## I. BACKGROUND

Fernandez was convicted by guilty plea of one count each of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349, Computer Hacking in violation 18 U.S.C. § 1030(a)(4), (c)(3)(A), and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1). ECF No. 264. Fernandez was sentenced to a term of imprisonment totaling 129 months to be followed by a total of 5 years of supervised release. *Id.* Fernandez is now serving his sentence at FCI Florence after transferring from FCI Victorville in November 2020. ECF No. 302 at 9–10; ECF No. 302-2, Ex. D ¶ 6. Fernandez has

1

served approximately 86 months, or two-thirds of his sentence, not accounting for any good time credits. ECF No. 302 at 3.

Fernandez has type II diabetes and is HIV positive. ECF No. 266 ("Presentence Report" or "PSR") at 22–23; ECF No. 297 at 3. Last July, Fernandez was hospitalized with COVID-19 for six days and experienced difficulty breathing and low oxygen levels. ECF No. 302 at 12. Following his hospitalization, Fernandez was diagnosed with hypertension and continues to experience chest pain and high blood pressure despite medication. *Id.*; ECF No. 297 at 3.

On February 8, 2021, the Court accepted as filed Fernandez's pro se motion for compassionate release. ECF No. 297. The Court thereafter appointed counsel to assist Fernandez in seeking compassionate release. ECF No. 298. On February 22, 2021, the Government filed a response in opposition. Opp. On March 1, 2021, Fernandez, through counsel, filed a reply. ECF No. 302.

## II. DISCUSSION

Fernandez moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Fernandez has satisfied the administrative exhaustion requirement, and second, whether Fernandez has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).  One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*.  As one district court explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A).  *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A.  Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release.  The parties agree that Fernandez has met the statutory exhaustion requirement because he filed this motion over 30 days following his request for compassionate release to the FCI Victorville warden.  ECF No. 297 at 2; Opp. at 11; ECF No. 302-2, Ex. J.  Accordingly, the Court can consider the merits of Fernandez's motion.

### B.  Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

   (1) (A) Extraordinary and compelling reasons warrant the reduction; or

                                . . .

   (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

   (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons."  The

Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release. While the Court's decision is guided by this policy statement, a number of district courts have found that the amended Section 3582(c)(1)(A)(i) grants courts independent discretion to determine whether a defendant has provided extraordinary and compelling reasons for a reduction of their sentence. *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md.), *aff'd sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *see also United States v. Redd*, 444 F. Supp. 3d 717, 724–25 (E.D. Va. 2020).

Fernandez argues that his type II diabetes, HIV, newly diagnosed hypertension, and past hospitalization with severe COVID-19 render him highly vulnerable to severe illness or death were he to become infected again. ECF No. 297 at 3. The Government "concedes that defendant's medical conditions (HIV, diabetes, hypertension, and prior positive COVID-19 test), combined with BOP's challenges to control the outbreak of COIVD-19, arguably constitute 'extraordinary and compelling circumstances.'" Opp. at 14. However, the Government also notes that Fernandez is actively being treated for his conditions while in custody and that his a recent checkup suggests that functions related to his pulmonary and cardiovascular conditions were within normal limits. *Id.* at 9. Fernandez disputes the suggestion that he is receiving adequate care while he is in prison, as his blood pressure remains high and he is unable to receive frequent medical attention for his many conditions. ECF No. 302 at 12.

The Court finds that the heightened risks that Fernandez faces if he were to contract COVID-19 based on his medical conditions establish extraordinary and compelling reasons for his release. Diabetes, HIV, and hypertension are all conditions identified by the Centers for Disease Control and Prevention ("CDC") that can heighten

5

the risk of severe injury for those who contract COVID-19.[1]  *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.  Any incarcerated person with one of the underlying conditions or in an at-risk age group as identified by the CDC is unlikely to be able "to provide self-care within the environment of a correctional facility" to avoid contracting and suffering severe effects of COVID-19 as the virus continues to spread.  U.S.S.G. § 1B1.13 cmt. 1(A)(ii).  *See United States v. Ramos*, 450 F.Supp.3d 63, 65 (D. Mass. 2020) ("[I]t is not possible for a medically vulnerable inmate . . . to isolate himself in this institutional setting.").  Even though Fernandez previously contracted COVID-19 and thus may have gained some immunity to further infection, the science is currently unclear as to how long such immunity lasts, and the spread of new variants adds additional uncertainty.  *See* Pengfei Wang et al., *Antibody Resistance of SARS-CoV-2 Variants B.1.351 and B.1.1.7*, Nature, Mar. 8, 2021, https://www.nature.com/articles/s41586-021-03398-2.  Given the severity of Fernandez's last encounter with COVID-19, and the numerous pre-existing conditions he has, the Court concludes that Fernandez is still at high risk.

The Court also notes that although Fernandez has received periodic appointments to manage his health issues, his newly developed (or, at least, newly diagnosed) hypertension does not yet appear to be well-controlled, as recent clinical encounters reflect that his blood pressure remains high.[2]  Opp. Ex. B (filed under seal).  The fact that

---

[1] The CDC now notes that "possibly high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19." *People With Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (updated Mar. 29, 2021).

[2] As defined by the American Heart Association, a blood pressure reading of less than 120/80 is within the normal range.  *See* Understanding Blood Pressure Readings, Am. Heart Ass'n, https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings.  Under these metrics, Fernandez's blood pressure has typically been in the "Stage 2" hypertension range.

Fernandez's blood pressure has not yet been controlled is cause for additional concern about his health in custody and the possible impact of a subsequent COVID-19 infection.

Therefore, the Court finds that Fernandez's health conditions present extraordinary and compelling reasons under Section 3582.

### C. Sentencing Factors and Public Safety

Before determining if release is warranted, the Court must also take into account public safety and the Section 3553(a) sentencing factors. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii); U.S.S.G. 1B1.13(2). These factors include, among other things, the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

The Government points out that Fernandez's participation in the criminal scheme, involving the stealing and misuse of thousands of victims' personal identification information, led to hundreds of thousands of dollars in losses that Fernandez used to support his methamphetamine addiction. Opp. at 15. In the Government's view, the severity of Fernandez's offenses and his past substance abuse issues demonstrate that Fernandez continues to pose a danger of recidivism. *Id.* at 15–16. The Government has also provided evidence that many victims of the scheme perpetrated by Fernandez and his co-conspirators continue to suffer the impact, both financial and personal, of Fernandez's actions. Fernandez argues that although he committed a serious offense, he has been able to overcome the methamphetamine addiction and fatalistic attitude that led him to engage in criminal activity. ECF No. 302 at 6–8. He contends that his actions during his seven years in custody demonstrate he has committed to his rehabilitation. *Id.* at 6–11. Given that he has served the vast majority of his sentence when good time and other credits are taken into account, Fernandez maintains, a modest sentence reduction in light of the serious risks to his health would be consistent with the sentencing factors. *Id.* at 6–13.

From approximately 2011 to 2013, Fernandez and his co-conspirators obtained the personal identification information of thousands of individuals and used that information to defraud merchants and financial institutions, causing some of the victims to suffer tens of thousands of dollars in losses. PSR at 5–8. This was a serious offense, which is why the Court sentenced Fernandez to over 10 years in prison. The Court likewise recognizes the enormous harm that Fernandez's actions have wrought on the victims of the scheme, and that there is a continuing concern about recidivism given Fernandez's past sense of impunity given his health conditions. However, Fernandez has worked genuinely towards the root of his criminal behavior—his addiction—which significantly tempers the Court's concerns that a sentence reduction would give Fernandez the opportunity to reoffend. While incarcerated, after some missteps during his first two years in prison, Fernandez participated in a number of programs to combat his methamphetamine addiction, even serving as an instructor for several courses about avoiding drug abuse. *See* ECF No. 302-2, Ex. C. His engagement with other programs while in custody, such as gaining certifications, serving as a suicide watch inmate companion, and working for UNICOR, also demonstrates that Fernandez has made sincere efforts to overcome the fatalistic attitude he presented when he was arrested. *Id.*; ECF No. 302-2, Ex. D ¶ 11. Fernandez also transferred facilities in order to enroll in the Residential Drug Abuse Program ("RDAP"). ECF No. 302-2, Ex. D ¶ 6. Ultimately, the Court finds that Fernandez poses much less of a danger to the community now than when he was first sentenced, given his progress towards sobriety and departure from the mindset that led to his previous criminal activity.

The Court also finds that a reduction of Fernandez's sentence would not be contrary to the factors set forth in Section 3553(a). Upon finishing the unit-based component of RDAP, Fernandez would be eligible for early placement in a community-based program and, should he finish the entire program, a potential sentence reduction of

up to 12 months.³  *See* 18 U.S.C. § 3621; 28 C.F.R. § 550.53; *Mora-Meraz v. Thomas*, 601 F.3d 933, 935 (9th Cir. 2010) (describing RDAP).  With this potential sentence reduction and good time credits also accounted for, Fernandez has completed over 85% of his sentence and is even nearer to release to a halfway house for completion of the final stage of the RDAP program.  *See* ECF No. 302-2 at 13; 28 C.F.R. § 550.56.  The fact that Fernandez is at the end of his custodial sentence indicates that a slight reduction would still reflect the seriousness of the offense and provide adequate punishment.  *See* 18 U.S.C. § 3553(a)(2).  Further, all of Fernandez's co-conspirators have either already been released or are very close to completing their sentences, indicating that a sentence reduction would not result in unwarranted disparities between co-defendants.  *See* 18 U.S.C. § 3553(a)(6).  The Court will also be able to place further restrictions on Fernandez's liberty to reduce the risk of recidivism while he is subject to home confinement at his mother's home in San Diego.⁴  ECF No. 302-2, Ex. B.  Specifically, the Court will update the conditions of release imposed in the original judgment to permit the U.S. Probation Office to conduct searches of Fernandez's electronic communication devices if there is a reasonable suspicion that he has violated the terms of his supervised release.  Fernandez's online activity will therefore be subject to monitoring, lessening the potential for recidivism.

Accordingly, the Court finds that a sentence reduction would be consistent with the sentencing factors set forth in Section 3553(a) and would not pose an undue risk to public

---

³ Although the Court had recommended at sentencing that Fernandez be placed at a facility that offered RDAP, *see* ECF No. 264, he was initially placed at FCI Victorville, which does not have the program. Thus, Fernandez was only able to begin the program after he transferred to FCI Florence.

⁴ The Government notes that Fernandez's health has improved while he has been receiving regular care while in custody. Opp. at 15–16. However, the Government does not support its insinuation that Fernandez will not continue to treat his medical conditions when released, and the fact that Fernandez contracted COVID-19 while in custody and continues to be exposed to the virus convinces the Court that continued confinement poses more risks than benefits to Fernandez's health.  *See* 18 U.S.C. § 3553(a)(2)(D).

9

safety. Placement in home confinement would balance the need to protect Fernandez from the potentially devastating health consequences of a COVID-19 infection with the need to ensure Fernandez continues on a path towards rehabilitation.

### III. CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **GRANTED**, to be effective at the close of business today. Fernandez's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c), effective immediately, to be followed by a 60-month term of supervised release under conditions set forth in the original judgment, plus the following added special condition:

> (1) Fernandez shall be placed in home confinement for a period of 12 months without electronic monitoring where he will be restricted to his residence at all times except for medical necessities and court appearances or other activities specifically pre-approved by the Court.

Additionally, the Court amends the previously imposed special condition (listed as number 1 in the Judgment, ECF No. 264 at 4) to impose the following:

> (2) Fernandez shall submit his person, property, house, residence, vehicle, papers, [computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The offender must warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the offender has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

It is **FURTHER ORDERED** that Fernandez shall remain in self-quarantine for a period of time not less than 14 days after his release.

Fernandez is **HEREBY ORDERED** to report by telephone to the U.S. Probation Office in San Diego, California within 24 hours of his release from custody.

The Government shall serve copies of this order on the Warden of FCI Florence immediately. The Warden shall immediately release Defendant Victor Alejandro Fernandez from custody. In the event that the Warden or any party requests any clarification of or modification to this order, they shall make such request in writing immediately upon receipt of the order.

**IT IS SO ORDERED.**

Dated: April 2, 2021

Hon. Gonzalo P. Curiel
United States District Judge